# EXHIBIT "A"

**McEldrew Purtell**
Daniel N. Purtell, Esq.
Gregory R. Kiss, Esq.
Danielle L. Duffy, Esq.
Identification Nos. 310376, 324993, 314000
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800

Attorneys for Plaintiffs



Filed and Attested by the
Office of Judicial Records
14 APR 2025 01:46 pm
L. BREWINGTON

| | |
|---|---|
| **MICHAEL AND ALVA PONS**<br>**173 Oxford Rd**<br>**Cinnaminson, NJ 08077**<br><br>*Plaintiffs,*<br><br>v.<br><br>**THE GREAT WOLF LODGE OF THE POCONOS, LLC**<br>**1 Great Wolf Lodge Drive**<br>**Scotrun, PA 18355**<br><br>**And**<br><br>**GREAT WOLF RESORTS HOLDINGS, INC.**<br>**350 N. Orleans Street, Suite #10000B**<br>**Chicago, IL 60654**<br><br>**And**<br><br>**BLACKTSONE REAL ESTATE PARTNERS IX**<br>**345 Park Avenue**<br>**New York, NY 10154**<br><br>**And**<br><br>**BLACKSTONE, INC.**<br>**345 Park Avenue**<br>**New York, NY 10154**<br><br>**And** | **PHILADELPHIA COURT OF COMMON PLEAS**<br><br><br>**NO.:**<br><br><br><br>**JURY TRIAL DEMANDED** |

**CENTERBRIDGE PARTNERS, L.P.**
**375 Park Avenue**
**New York, NY 10152**

**And**

**JOHN DOE 1**
**Address Unknown**

**And**

**JOHN DOE 2**
**Address Unknown**

**And**

**JOHN DOE 3**
**Address Unknown**

**And**

**JOHN DOE 4**
**Address Unknown**

*Defendants*

## NOTICE TO PLEAD

*NOTICE*

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint & Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL SERVICE
ONE READING CENTER
PHILADELPHIA, PA 19107
215-238-6333

*AVISO*

**Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias deplazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de s persona. Sea avisado que si used no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder u otros derechos importantes para usted.**

**LLEVE ESTSASS DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PAPA AVAERIGUAR DONDE SE PAEDE CONSEGUIR ASISTENCIA LEGAL.**

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE RFERENCIA DE ABOGADOS
ONE READING CENTER
FILADELFIA, PA 19107
215-238-6333

Case ID: 250401753

**McEldrew Purtell**
Daniel N. Purtell, Esq.
Gregory R. Kiss, Esq.
Danielle L. Duffy, Esq.
Identification Nos. 310376, 324993, 314000
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800

Attorneys for Plaintiffs

| | |
|---|---|
| **MICHAEL AND ALVA PONS**<br>**173 Oxford Rd**<br>**Cinnaminson, NJ 08077**<br><br><br>*Plaintiffs,*<br><br>v.<br><br>**THE GREAT WOLF LODGE OF THE POCONOS, LLC**<br>**1 Great Wolf Lodge Drive**<br>**Scotrun, PA 18355**<br><br>**And**<br><br>**GREAT WOLF RESORTS HOLDINGS, INC.**<br>**350 N. Orleans Street, Suite #10000B**<br>**Chicago, IL 60654**<br><br>**And**<br><br>**BLACKTSONE REAL ESTATE PARTNERS IX**<br>**345 Park Avenue**<br>**New York, NY 10154**<br><br>**And**<br><br>**BLACKSTONE, INC.**<br>**345 Park Avenue**<br>**New York, NY 10154**<br><br>**And** | **PHILADELPHIA COURT OF COMMON PLEAS**<br><br>**NO.:**<br><br><br><br>**JURY TRIAL DEMANDED** |

Case ID: 250401753

| | |
|---|---|
| **CENTERBRIDGE PARTNERS, L.P.**<br>**375 Park Avenue**<br>**New York, NY 10152**<br><br>**And**<br><br>**JOHN DOE 1**<br>**Address Unknown**<br><br>**And**<br><br>**JOHN DOE 2**<br>**Address Unknown**<br><br>**And**<br><br>**JOHN DOE 3**<br>**Address Unknown**<br><br>**And**<br><br>**JOHN DOE 4**<br>**Address Unknown**<br><br>*Defendants* | |

## COMPLAINT – CIVIL ACTION

1.      Plaintiffs, Michael and Alva Pons, are adult citizens and residents of the State of New Jersey residing at the above captioned address.

2.      Defendant, Great Wolf Lodge of the Poconos, LLC, is a corporation or other business entity that is a foreign registrant of the Commonwealth of Pennsylvania, incorporated under the laws of the State of Delaware, with a principal place of business located at the above captioned address.

3.      Defendant, Great Wolf Lodge of the Poconos, LLC, was acting by and through its agents, servants, workers, contractors, and/or employees who were acting within the course and

Case ID: 250401753

scope of their agency, service and/or employment with Defendant, Great Wolf Lodge of the Poconos, LLC.

4. At all relevant times, Defendant, Great Wolf Lodge of the Poconos, LLC, has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania through the ownership, management, and operation of the Great Wolf Lodge Poconos Resort in Scotrun, PA.

5. Defendant, Great Wolf Resorts Holdings, Inc., is a corporation or other business entity that is a foreign registrant of the Commonwealth of Pennsylvania, incorporated under the laws of the State of Delaware, with a principal place of business located at the above captioned address.

6. Defendant, Great Wolf Resorts Holdings, Inc., was acting by and through its agents, servants, workers, contractors, subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Defendant Great Wolf Resorts Holdings, Inc.

7. At all relevant times, Defendant, Great Wolf Resorts Holdings, Inc., has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania through the operation, ownership, and management of the Great Wolf Lodge Poconos Resort in Scotrun, PA.

8. Defendant, Blackstone Real Estate Partners IX, is a corporation or other business entity that is incorporated under the laws of the State of Delaware, with a principal place of business located at the above captioned address.

9. Defendant, Blackstone Real Estate Partners IX, was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers,

contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Blackstone Real Estate Partners IX.

10.     At all relevant times, Defendant, Blackstone Real Estate Partners IX, has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, Pennsylvania, including regularly conducting business in Philadelphia County through the operation, ownership, and management of its real estate and other assets.

11.     Defendant, Blackstone, Inc., is a corporation or other business entity that is incorporated under the laws of the State of Delaware, with a principal place of business located at the above captioned address.

12.     Defendant, Blackstone, Inc., was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers, contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Blackstone Inc.

13.     At all relevant times, Defendant, Blackstone, Inc., has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, Pennsylvania, including regularly conducting business in Philadelphia County through the operation, ownership, and management of its real estate and other assets.

14.     Defendant, Centerbridge Partners, L.P., is a corporation or other business entity that is incorporated under the laws of the State of Delaware, with a principal place of business located at the above captioned address.

15.     Defendant, Centerbridge Partners, L.P., was acting by and through its agents, servants, partners, corporate affiliates, corporate subsidiaries, owners, managers, workers, contractors, other subsidiaries and/or employees who were acting within the course and scope of their agency, service and/or employment with Centerbridge, L.P.

16.     At all relevant times, Defendant, Centerbridge, L.P., has carried out, and continues to carry out substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania and specifically, Philadelphia County, Pennsylvania, including regularly conducting business in Philadelphia County through the operation, ownership, and management of its real estate and other assets.

17.     Defendant, John Doe 1, is an unknown corporation or subsidiary that is owned, controlled, or otherwise managed by Defendant Centerbridge Partners, L.P., through which Centerbridge Partners, L.P., manages, controls, or otherwise holds ownership over Great Wolf Resorts Holdings, Inc., and/or Great Wolf Lodge of the Poconos, LLC.

18.     Based on all available information accessible to the Plaintiffs, the Plaintiffs are not able to identify Defendant John Doe 1 at this time.

19.     Defendant, John Doe 2, is an unknown corporation, joint venture, subsidiary, or other corporate form, that is owned, controlled, or otherwise managed by Defendants Centerbridge Partners, L.P., Blackstone, Inc., Blackstone Real Estate Partners IX, and/or John Doe 1, through which the Defendants manage, control, operate, and/or otherwise hold ownership over Great Wolf Resorts Holdings, Inc., and/or Great Wolf Lodge of the Poconos, LLC.

20.     Based on all available information accessible to the Plaintiffs, the Plaintiffs are not able to identify Defendant John Doe 2 at this time.

21.     Defendants, Great Wolf Lodge of the Poconos, LLC, Great Wolf Resorts Holdings, Inc., Blackstone Real Estate Partners IX, Blackstone, Inc., Centerbridge Partners, L.P., John Doe 1, and John Doe 2, are hereinafter collectively referred to as "Defendants GW".

22.     Defendants GW, as the owners, operators, managers, and supervisors of Great Wolf Resorts Holdings, Inc., and its subsidiaries and controlled corporate forms, like John Doe 1 and John Doe 2, exercised ownership, management, operational decision making, and control over the Great Wolf Lodge Resorts, Inc., and Great Wolf Lodge of the Poconos, LLC.

23.     Defendant, John Doe 3, is an unknown person or business entity that was responsible for the sampling, testing, monitoring, oversight, and/or management of the pool water at Great Wolf Lodge to ensure the water was safe and usable for invitees, like Plaintiffs.

24.     Based on all available information accessible to the Plaintiffs, the Plaintiffs are not able to identify Defendant John Doe 3 at this time.

25.     Defendant, John Doe 4, is an unknown person or business entity that was responsible for the supply, mixing, and/or sale of the chemicals to Great Wolf Lodge Poconos Resort to treat the park's water so that it was safe and usable by invitees, like the Plaintiffs.

26.     Based on all available information accessible to the Plaintiffs, the Plaintiffs are not able to identify Defendant John Doe 4 at this time.

27.     On December 12, 2023, Michael Pons and his family traveled to Great Wolf Lodge Poconos Resort located in Scotrun, PA, to enjoy several days together at the resort's indoor water park.

28.     The Pons family, including Michael Pons, spent December 13, 2024, bathing and swimming in the resort's indoor pools and riding the park's water slides.

29.     Unbeknownst to the Pons family, the resort's water and facilities were not safe for swimming and recreation.

30.     The resort's recreational water supply contained and/or allowed for the presence of Staphylococcus aureus bacteria.

31.     Those dangerous conditions persisted as a result of Defendants GW, John Doe 3 and/or John Doe 4's improper operation, management and/or treatment of its pool water, which allowed for the presence, contamination and/or contraction of Staphylococcus aureus bacteria.

32.     Alternatively, those dangerous conditions persisted as a result of John Doe 4's failures in ensuring that the chemicals and/or otherwise defined treatments that it supplied to Defendants GW and/or John Doe 3, were proper in their chemical composition in order to have those chemicals and treatments achieve their intended purpose.

33.     Alternatively, those dangerous conditions persisted as a result of John Doe 4's failures in providing its chemicals and treatments with improper directions, which failed to provide guidance and warnings to adequately educate and direct end-users, like Defendants GW and/or John Doe 3, on how to use the chemicals and treatments to achieve their intended purpose.

34.     Likewise, Defendants John Doe 4 failed to properly inspect their chemicals and pool treatments to ensure that the chemicals and treatments were suitable and properly compounded to achieve their intended result: provide safe, bacteria free bathing water.

35.     On December 14, 2023, the day Michael and Alva Pons left the resort, Michael began suffering from fever, headaches, lower back pain, right hip pain radiating to his lower back and right groin, shortness of breath with activity, neck pain and lightheadedness.

36.     Over the next several days, his symptoms worsened.

37.     Due to his pain and sudden health deterioration, Michael emergently presented to Cooper Hospital Urgent Care on December 20, 2023.

38.     Cooper Hospital Urgent Care, after consultation and evaluation, called Palmyra EMS and arranged for Michael to be taken by ambulance to the Cooper Hospital Emergency Room that same day for further work-up and evaluation.

39.     On the same day at Cooper ER, Michael underwent a litany of testing, which revealed Staphylococcus aureus (MSSA) infection.

40.     A differential diagnosis was performed by Cooper to ascertain the possible cause of the staph infection, noting Michael's recent trip to Great Wolf Lodge.

41.     Cooper's differential diagnosis could not rule out Defendants GW's pools as the source of the infection, and Michael presented with no other conditions, health problems, or any other travel or health history as a possible cause of source of his staph infection.

42.     Based on information and belief, Plaintiff contracted the staff infection through either an abrasion on his inner left thigh that he sustained while riding water slides and/or from the pressurized contaminated pool water forced through his mouth, urethra or other orifice.

43.     On December 22, 2023, Medical imaging of Michael's spine revealed spinal epidural abscesses at the C1-2, T3, T12 and C3-C4.

44.     The Cooper doctors concluded that the spinal abscesses were secondary and caused by Michael's staph infection.

45.     On December 22, 2023, Michael underwent multilevel laminectomies to alleviate the pressure and spinal instability caused by the abscesses.

46.     Following the laminectomy surgery, Michael's condition spiraled.

47.     Due to complications from his spinal surgeries, Michael became hypotensive and bradycardic and he suffered cardiac arrests on December 26 and December 28, 2023.

48.     On January 6, 2024, an MRI of Michael's spine revealed a spinal infarction (stroke) that ran from his spinal cord to his brain stem.

49.     Cooper determined the spinal stroke to be the result of Michael's cardiac arrests.

50.     The doctors informed Michael's family that the spinal stroke caused Michael to become quadriplegic.

51.     As a result of his quadriplegia and associated complications, Michael would remain largely inpatient at multiple healthcare facilities until September 1, 2024.

52.     Today, Michael is powerchair dependent.

53.     Michael has limited movement in his arms, is unable to close and grip with his hands, and has almost no ability to move his legs.

54.     Michael remains under the regular outpatient care of neuro-spine specialists, physical therapists, urologists, cardiologists, and other doctors.

55.     Michael is incontinent of bowel and bladder.

56.     Michael sleeps in a hospital bed at his home and requires the use of a Hoyer lift to get in and out of bed.

57.     Michael is largely unable to feed himself and is fully dependent on the care of his wife, Alva, to survive each day.

58.     In short, because of the Defendants' negligence and tortious conduct of the Defendants, Plaintiffs' lives are forever and permanently altered.

59.     Plaintiff, Michael Pons, has sustained and makes claims for pain and suffering, loss of physical function, permanent physical, mental and psychological injuries, humiliation and

Case ID: 250401753

embarrassment, loss of life's pleasures, and all other damages to which he is entitled or may be entitled under the laws of the Commonwealth of Pennsylvania.

60.    Plaintiff, Alva Pons, as a result of the catastrophic and life changing injuries endured by her husband, Michael Pons, has suffered a loss of consortium, as well as mental and psychological injuries.

61.    The physical and emotional injuries to Plaintiff, Michael Pons, and consortium injuries to Alva Pons were caused by the joint and several negligence of Defendants GW, John Doe 3, and Defendant John Doe 4, individually or severally.

## COUNT I – NEGLIENCE
### Plaintiffs v. Defendants GW

62.    Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

63.    As the owners, operators, managers, and/or supervisors of the Great Wolf Lodge Poconos Resort, Defendants GW owed a duty, both under Pennsylvania regulations and the common law, to provide a safe environment for their patrons and guests, including the Plaintiffs.

64.    At all times relevant hereto, Defendants GW were responsible for the actions of their employees, staff, contractors and servants in ensuring that the resort, pools, water slides, and other water attractions, were safe and suitable for bathing and use.

65.    At all times relevant hereto, Defendants GW maintained a nondelegable duty to provide a water park free from injurious hazards.

66.    Defendants were responsible for the hiring, training, supervision and oversight of their agents, servants, contractors, workers and/or employees who were responsible for ensuring that the water park and park's pool and bathing water were safe for patron use.

Case ID: 250401753

67.     At all times relevant hereto, Defendants were responsible to ensure that their agents, servants and/or employees involved in the supervision, control and operation of the subject water park were properly hired, trained, experienced and supervised in providing, sampling, treating and testing the pools' water to ensure safe bathing water for park patrons.

68.     On December 12 and 13, 2024, Plaintiffs were business invitees to whom Defendants owed the highest duty of care.

69.     Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of the Defendants individually and/or through their agents, servants, workers and/or employees, which included the following:

a.  Failing to adequately maintain, inspect, monitor, and test its property for dangerous conditions including, but not limited to the presence of Staphylococcus aureus bacteria in its pool water;

b.  Failing to adequately maintain, inspect, monitor, and test its systems when such would have discovered the presence of Staphylococcus aureus bacteria in its pool water;

c.  Failing to properly train and supervise its employees and others to whom it entrusted the care and maintenance of its property to identify the presence of legionella and danger to those who come in contract with Staphylococcus aureus infection;

d.  Failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of Staphylococcus aureus infection in its pool systems;

e.  Failing to warn its patrons of the presence of Staphylococcus aureus bacteria in its pool water;

f.  Violating and failing to comply with federal, state, and local rules, regulations, and ordinances and standards of care applicable to the operation of its property;

g.  Failing to take any appropriate action to correct the presence of Staphylococcus aureus bacteria after knowing of the presence and/or suspected presence of Staphylococcus aureus bacteria at its property;

h.  Failing provide a reasonably safe environment for its patrons; and

Case ID: 250401753

i. Otherwise, being negligent in a manner not now known but which may become known prior to or at the time of trial.

70. The contraction of Staphylococcus aureus (MSSA) infection is an event that does not normally occur in the absence of negligence. The Plaintiff therefore calls on Defendants GW for proof as to the propriety of its conduct.

71. Defendants GW are responsible by law for the negligence of its agents, ostensible agents, servants, and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

72. As a direct and proximate result of the Defendants GW's conduct and omissions, the Plaintiffs' suffered mental and physical injuries, pain, suffering, and death; emotional distress; loss of enjoyment of life's pleasures; past medical expenses; loss of future earning capacity; and all damages and losses available under Pennsylvania law.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants GW in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT II – NEGLIENCE
### Plaintiffs v. John Doe 3

73. Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

74. As the entity responsible for the sampling, testing, treating, monitoring, overseeing, and/or managing of the pool water at Great Wolf Lodge Poconos Resort to ensure the water was safe and usable for invitees, Defendant John Doe 3 owed a duty, both under Pennsylvania regulations and the common law, to provide a safe environment for the resorts' patrons and guests, including to the Plaintiffs.

75.     At all times relevant hereto, Defendant John Doe 3 was responsible for the actions of its employees, staff, contractors and servants in ensuring that the resort, pools, water slides, and other water attractions, were safe and suitable for bathing and use.

76.     At all times relevant hereto, Defendant John Doe 3 maintained a nondelegable duty to provide safe and bacteria-free bathing water to the Great Wolf Lodge Poconos Resort.

77.     Defendant John Doe 3 was responsible for the hiring, training, supervision and oversight of their agents, servants, contractors, workers and/or employees who were responsible for ensuring that the water park and park's pool and bathing water were safe for patron use.

78.     At all times relevant hereto, Defendants were responsible to ensure that their agents, servants and/or employees involved in the sampling, testing, treating, monitoring, overseeing, and/or managing of the pool water were properly hired, trained, experienced and supervised in providing, sampling, treating and testing the pools' water to ensure safe bathing water for park patrons.

79.     On December 12 and 13, 2024, Plaintiffs were foreseeable persons to whom Defendant John Doe 3 owed the highest duty of care.

80.     Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant John Doe 3 individually and/or through their agents, servants, workers and/or employees, which included the following:

    a.  Failing to adequately maintain, inspect, monitor, and test its property for dangerous conditions including, but not limited to the presence of Staphylococcus aureus bacteria in the pool water;

    b.  Failing to adequately maintain, inspect, monitor, and test its systems when such would have discovered the presence of Staphylococcus aureus bacteria in the pool water;

    c.  Failing to properly train and supervise its employees and others to whom it entrusted the care and maintenance of its property to identify the presence of

legionella and danger to those who come in contract with Staphylococcus aureus bacteria;

d. Failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of Staphylococcus aureus bacteria in its pool systems;

e. Failing to warn its patrons of the presence of Staphylococcus aureus bacteria in the pool water;

f. Violating and failing to comply with federal, state, and local rules, regulations, and ordinances and standards of care applicable to the sampling, testing, treating, monitoring, overseeing, and/or managing of the pool water;

g. Failing to conform to and follow the laws and regulations required by the Pennsylvania Bathing Code;

h. Failing to conform to and follow the laws and regulations required by the Pennsylvania Bathing Law Act;

i. Failing to take any appropriate action to correct the presence of Staphylococcus aureus bacteria after knowing of the presence and/or suspected presence of Staphylococcus aureus bacteria in the pool water;

j. Failing to provide a reasonably safe environment for foreseeable bathers and swimmers, like Plaintiffs; and

k. Otherwise, being negligent in a manner not now known but which may become known prior to or at the time of trial.

81. The contraction of Staphylococcus aureus (MSSA) infection is an event that does not normally occur in the absence of negligence. The Plaintiff therefore calls on Defendant John Doe 3 for proof as to the propriety of its conduct.

82. Defendant John Doe 3 is responsible by law for the negligence of its agents, ostensible agents, servants, and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

83. As a direct and proximate result of the Defendant John Doe 3's conduct and omissions, the Plaintiffs' suffered mental and physical injuries, pain, suffering, and death;

Case ID: 250401753

emotional distress; loss of enjoyment of life's pleasures; past medical expenses; loss of future earning capacity; and all damages and losses available under Pennsylvania law.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant John Doe 3 in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT III – NEGLIENCE
### Plaintiffs v. John Doe 4

84.     Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

85.     As the entity responsible for the supply, mixing, and/or sale of the chemicals to Great Wolf Lodge Poconos Resort to treat the park's water so that it was safe and usable by invitees, like the Plaintiffs, Defendant John Doe 4 owed a duty, both under Pennsylvania regulations and the common law, to provide a safe environment for the resorts' patrons and guests, including to the Plaintiffs.

86.     At all times relevant hereto, Defendant John Doe 4 was responsible for the actions of its employees, staff, contractors and servants in ensuring that the chemicals it supplied to the resort to be used to treat the park's water, were safe and suitable for bathing and use.

87.     At all times relevant hereto, Defendant John Doe 4 maintained a nondelegable duty to provide chemicals and treatments to Great Wolf Lodge Poconos Resort that were effective and constituted to eliminate, kill and prevent the presence of Staphylococcus aureus bacteria in the park's pool water.

88.     Defendant John Doe 4 was responsible for the hiring, training, supervision and oversight of their agents, servants, contractors, workers and/or employees who were responsible

Case ID: 250401753

for the supply, mixing, and/or sale of the chemicals to Great Wolf Lodge Poconos Resort to treat the park's water so that it was safe and usable by invitees, like the Plaintiffs.

89.     At all times relevant hereto, Defendant John Doe 4 was responsible to ensure that their agents, servants and/or employees involved in the supply, mixing, and/or sale of the chemicals to Great Wolf Lodge Poconos Resort to treat the park's water so that it was safe and usable by invitees, like the Plaintiffs, were properly hired, trained, experienced and supervised in in the supply, mixing, and/or sale of the chemicals.

90.     On December 12 and 13, 2024, Plaintiffs were foreseeable persons to whom Defendant John Doe 4 owed the highest duty of care.

91.     Plaintiffs' aforementioned injuries were caused by the negligence, carelessness, wantonness, willfulness, recklessness and gross negligence of Defendant John Doe 4 individually and/or through its agents, servants, workers and/or employees, which included the following:

a.  Failing to adequately maintain, inspect, monitor, and test chemicals and treatments for efficacy and potency;

b.  Selling, distributing and/or otherwise providing chemicals to Defendants GW and/or John Doe 3, that were not effective in achieving their intended purpose, including the purpose of safely treating the pool water;

c.  Failing to properly train and supervise its employees and others to whom it entrusted the mixing of chemicals and treatments ultimately sold to end users like, Defendants GW and/or John Doe 3;

d.  Failing to properly train and supervise its employees and others to whom it entrusted labeling and the packaging of instructions for chemicals and treatments ultimately sold to end users like, Defendants GW and/or John Doe 3;

e.  Failing to provide adequate and/or complete instructions with its chemicals to properly advise and direct end users, like Defendants GW and John Doe 3, on the correct use and/or amount of chemicals necessary to safely treat the resorts' pool water;

f.  Failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the safe distribution of

chemicals and treatments;

g.  Failing to warn end users, like Defendants GW and/or John Doe 3, of the likelihood of bacteria and diseases that could arise from the improper treatment or improper use of chemicals, in treating the resorts' pools;

h.  Violating and failing to comply with federal, state, and local rules, regulations, and ordinances and standards of care applicable to the mixing, sale, distribution, and/or supply of pool chemicals and treatments; and

i.  Otherwise, being negligent in a manner not now known but which may become known prior to or at the time of trial.

92.  The contraction of Staphylococcus aureus (MSSA) infection is an event that does not normally occur in the absence of negligence. The Plaintiff therefore calls on Defendant John Doe 4 for proof as to the propriety of its conduct.

93.  Defendant John Doe 4 is responsible by law for the negligence of its agents, ostensible agents, servants, and/or employees and therefore for the injuries, damages, and losses suffered by the Plaintiffs.

94.  As a direct and proximate result of the Defendant John Doe 4's conduct and omissions, the Plaintiffs' suffered mental and physical injuries, pain, suffering, and death; emotional distress; loss of enjoyment of life's pleasures; past medical expenses; loss of future earning capacity; and all damages and losses available under Pennsylvania law.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant John Doe 4 in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

Case ID: 250401753

## COUNT IV – STRICT PRODUCT LIABILITY
## Plaintiffs v. John Doe 4

95.     Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

96.     At all times relevant, Defendant John Doe 4 was in the business of distributing, selling and/or supplying pool chemicals and treatments, including the chemicals and treatments that caused the catastrophic injuries suffered by Plaintiffs.

97.     Defendant John Doe 4 marketed and/or placed the chemicals and treatments into the stream of commerce, by selling the chemicals and treatments to Defendants GW and/or John Doe 3, which caused Plaintiffs' catastrophic injuries.

98.     The chemicals and treatments were expected to and did reach end users, like Defendants GW and John Doe 3, and its patrons and guests, like Plaintiffs, without substantial change in the condition in which they were distributed, sold and/or supplied by Defendant John Doe 4.

99.     The chemicals and treatments were sold and/or supplied by Defendant John Doe 4 in a defective condition because the chemicals and treatments were not properly mixed and/or constituted to effectively eliminate, kill, or otherwise prevent the presence of Staphylococcus aureus bacteria.

100.    The chemicals and treatments were distributed, sold and/or supplied by Defendant John Doe 4 in a defective condition because of Defendant John Doe 4's failure to warn, instruct, or otherwise direct users on the proper use, mix, concentration, and directions required for the chemical and treatments to be effective in treating water such that the chemicals and treatments would achieve their intended purpose.

Case ID: 250401753

101.    Defendant John Doe 4, by and through their agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, are strictly liable for the injuries suffered by Plaintiffs generally, and in the following respects:

    a.    selling, supplying and distributing a product in a defective condition;

    b.    selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

    c.    selling, supplying and distributing a product which lacked necessary safety features to protect foreseeable users of said product;

    d.    selling, supplying and distributing a product without simple and cost-effective safety devices;

    e.    selling, supplying and distributing a product without proper warnings;

    f.    selling, supplying and distributing a product that when used properly would cause serious injury to users;

    g.    manufacturing, designing, selling and distributing a product which failed to conform to all applicable US and Pennsylvania codes and laws.

    h.    manufacturing, designing, selling, and supplying chemicals, that when used improperly, were inherently dangerous;

    i.    manufacturing, designing, selling, and supplying products, that were not suitable for their intended use; and

    j.    selecting, distributing and selling a product, without inspecting and assuring that the product was safe for its intended use.

102.    At all relevant times, the chemicals and treatments were used for a purpose for which they were mixed, manufactured for, sold for, supplied for, or otherwise distributed for, and the chemicals and treatments were used in a foreseeable manner and/or misused in manner that was foreseeable.

103.    Defendant John Doe 4 is strictly liable to Plaintiffs for their injuries and damages.

104.    Due to Defendant John Doe 4's failure to conform to its obligations and duties under the rules and laws of the Commonwealth of Pennsylvania and federal law, Plaintiffs were caused to sustain devastating and catastrophic injuries.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant John Doe 4 in an amount in excess of fifty thousand dollars ($50,000), including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and brings this action to recover the same.

## COUNT V – LOSS OF CONSORTIUM
### Plaintiff, Alva Pons v. All Defendants

105.    Plaintiffs, by reference, incorporate all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

106.    At all relevant times hereto, Plaintiff, Alva Pons, was the lawfully wedded wife of husband-Plaintiff, Michael Pons.

107.    As a result of the injuries sustained by Michael Pons, his wife and Plaintiff, Alva Pons, has been and will continue to be deprived of the love, assistance, companionship, consortium and society of her husband, Plaintiff, Michael Pons, all to her great loss and detriment.

108.    Plaintiff, Alva Pons' consortium injuries are the direct and proximate result, whether jointly or severally, of Defendants GW, John Doe 3, and/or John Doe 4's aforementioned negligent and tortious conduct.

**McEldrew Purtell**

*/s/ Gregory R. Kiss, Esquire*
_____
Daniel Purtell, Esq.
Gregory R, Kiss, Esq.
Danielle Duffy, Esq.
Attorneys for Plaintiffs

Dated: <u>April 14, 2025</u>

Case ID: 250401753

## **<u>VERIFICATION</u>**

I, MICHAEL PONS, hereby verify that I am the Plaintiff in the within action and the statements made in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the averments in the Civil Action Complaint are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to sworn falsification to authorities.

_____
MICHAEL PONS

The signed document can be validated at https://app.vinesign.com/Verify

Vinesign Document ID: 026E334C-469D-425C-BA25-AB5652481924

## **<u>VERIFICATION</u>**

I, ALVA PONS, hereby verify that I am the Plaintiff in the within action and the statements made in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the averments in the Civil Action Complaint are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904, relating to sworn falsification to authorities.

_____
ALVA PONS

Case ID: 250401753

The signed document can be validated at https://app.vinesign.com/Verify